1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN MCCLINTOCK,                          No.  2:22-cv-1884 KJM KJN P

12                    Plaintiff,

13          v.                                 FINDINGS AND RECOMMENDATIONS

14   G. VALENCIA, et al.,

15                    Defendants.

16

17          Plaintiff is a state prisoner, proceeding pro se and in forma pauperis.  Plaintiff sua sponte

18   filed an amended complaint, and the undersigned determined that plaintiff stated potentially

19   cognizable retaliation claims against defendants G. Valencia, L. Cantu, and T. Cooper in claims

20   one, two and ten of the amended complaint.  (ECF No. 11.)  Plaintiff was granted leave to amend

21   to attempt to state cognizable claims against the remaining defendants provided they were related

22   to the retaliation claims brought against defendants G. Valencia, L. Cantu and T. Cooper.  (Id.)

23   Plaintiff filed objections to the dismissal of such claims and opted not to file a second amended

24   complaint.  (ECF No. 14.)  As set forth below, it is recommended that plaintiff's two unrelated

25   cognizable claims be severed from this action, and that the remaining claims be dismissed.

26   Plaintiff's Objections

27          In his objections, plaintiff claimed that each of the identified state actor defendants

28   personally and overtly participated in retaliations against plaintiff – or by their acts or omissions

                                                    1

had the duty to stop, once they were fully informed and aware of the subordinate defendants' ongoing retaliations.  (ECF No. 14 at 1.)  Plaintiff contends that such actions are related because they all stemmed from the fabrication of the anonymous threat on staff subjecting plaintiff to more perpetual retaliation.  (ECF No. 14 at 2.)  Plaintiff argues that his claims 1, 2 and 10 demonstrate that defendants G. Valencia, L. Cantu, and T. Cooper "maliciously threw the plaintiff into 'the lions' den of state actors' and every 'lion' is culpable for the mauling."  (ECF No. 14 at 2.)  He avers that all of his claims fall under First Amendment retaliation, even though some claims also allege Eighth Amendment violations.  Plaintiff argues he has demonstrated a decades long pattern:  plaintiff alleged perpetual retaliation based on his meritorious claims in case 2:18-cv-0560 JAM KJN, which was initiated by the perpetual retaliations in his meritorious claims raised in case 2:13-cv-0264 TLN DAD.  (ECF No. 14 at 2.)  Plaintiff contends that his claims 1 through 14 demonstrate that by defendants' acts or omissions they are party to a retaliatory "den of lions."  (ECF No. 14 at 2.)  Because plaintiff believes his allegations are sufficient to demonstrate such retaliation, he will not amend his complaint.  (ECF No. 14 at 3.)

Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  Thus, the court may dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A]

////

2

judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic Corp., 550 U.S. at 555) (citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, id., and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

The Civil Rights Act

To state a claim under § 1983, a plaintiff must demonstrate:  (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be established in several ways, including by

3

1   demonstrating that a supervisor's own culpable action or inaction in the training, supervision, or

2   control of his subordinates was a cause of plaintiff's injury.  Starr v. Baca, 652 F.3d 1202, 1208

3   (9th Cir. 2011).

4   Plaintiff's Prior Civil Rights Actions

5           2013 Case

6           In McClintock v. Colosimo, No. 2:13-cv-0264 TLN DB P (E.D. Cal.), cited in plaintiff's

7   objections, plaintiff alleged that defendants Colosimo and Beshears violated plaintiff's Eighth

8   Amendment rights to cruel and unusual punishment when they allowed a door to remain closed

9   on him.  Id.  Defendants' motion for summary judgment was denied, and thereafter the case

10  settled.  Id.  The stipulated dismissal reflects no admission of liability.  Id. (ECF No. 124.)

11          In the operative amended complaint (ECF No. 9) filed in the instant 2022 case, none of

12  the defendants named in case No. 2:13-cv-0264 TLN DB P were named herein, and plaintiff does

13  not allege that any defendant retaliated against plaintiff based on the filing of his 2013 case.

14  (ECF No. 9, passim.)

15          2018 Case

16          The other case raised in plaintiff's objections, McClintock v. Cooper, No. 2:18-cv-0560

17  DAD KJN P (E.D. Cal.),[1] alleged in pertinent part that defendants J. Cantu and L. Cantu

18  retaliated against plaintiff by conducting an excessive cell search immediately after plaintiff filed

19  a grievance against them and other named defendants on April 17, 2017.[2]  Id. (ECF No. 14 at 4.)

20  Although plaintiff describes Case No. 2:18-cv-0560 DAD KJN P as "meritorious," defendants

21  were granted summary judgment.  (ECF No. 142.)  This case is presently on appeal.  McClintock

22  v. Cooper, No. 23-15513 (9th Cir.).

23  ////

[1]  A court may take judicial notice of court records.  See, e.g., Bennett v. Medtronic, Inc., 285
F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both
within and without the federal judicial system, if those proceedings have a direct relation to
matters at issue") (internal quotation omitted).

[2]  None of the other defendants named in Case No. 2:18-cv-0560 DAD KJN P were named in the
instant action.

4

1       In the instant amended complaint (ECF No. 9), plaintiff cites Case No. 2:18-cv-0560

2    DAD KJN P, in connection with claims one, two and ten as to defendants G. Valencia, L. Cantu,

3    and T. Cooper, and plaintiff does not allege that any of the remaining defendants named in claims

4    three through nine and claims eleven through fourteen retaliated against plaintiff based on the

5    filing of the 2018 case.  (ECF No. 9, passim.)

6       2021 Case

7       As noted in this court's prior screening order, plaintiff attempted, on several occasions, to

8    bring the same claims he raises here against multiple defendants.  McClintock v. G. Valencia,

9    2:21-cv-0850 TLN EFB (E.D. Cal.), passim.  In such prior case, plaintiff was initially cautioned

10    that "a 'scattershot' approach in which plaintiff names dozens of defendants will not be looked

11    upon favorably by the court."  Id. (ECF No. 10 at 3.)  Plaintiff was also informed that he cannot

12    pursue unrelated claims in the same lawsuit.  Id. (Orders filed February 2, 2022, and May 24,

13    2022).  Further, on May 24, 2022, plaintiff was informed that he must pursue his deliberate

14    indifference claims against defendants Vega, Coker, Charon, and Associate Warden J. Cantu in

15    an action separate from his retaliation claims against defendants Valencia and L. Cantu.  Id. (ECF

16    No. 22 at 2.)  Ultimately, plaintiff's case was dismissed without prejudice on August 16, 2022,

17    based on plaintiff's failure to file a fourth amended complaint.  Id. (ECF Nos. 24, 27.)

18       Conclusion

19       Following review of plaintiff's prior civil rights cases, the undersigned does not find that

20    plaintiff's first amended complaint filed herein demonstrates a decades long pattern of retaliation

21    based on the filing of his claims in case 2:18-cv-0560 JAM KJN, or in case 2:13-cv-0264 TLN

22    DAD.  Rather, plaintiff must allege specific facts demonstrating that each named defendant

23    retaliated against plaintiff because of plaintiff's identified conduct protected by the First

24    Amendment, and that such retaliatory act "did not reasonably advance a legitimate correctional

25    goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

26       The undersigned now turns to plaintiff's amended complaint.

27    ////

28    ////

Plaintiff's Amended Complaint

      Claims One, Two and Ten

      By separate order, the undersigned found that plaintiff stated potentially cognizable retaliation claims as to defendants G. Valencia, L. Cantu and T. Cooper in claims one, two and ten based on defendant Valencia intercepting plaintiff's Form 22 request for interview form on June 9, 2020.  In the interview form, plaintiff requested to meet with the captain concerning the pattern of retaliations against plaintiff since his grievance and mentioned the defendants named in plaintiff's pending federal case, including defendants G. Valencia, L. Cantu and T. Cooper.  On June 10, 2020, defendants Valencia and L. Cantu "co-scribed" the anonymous note, using plaintiff's interview form as a template, and defendant T. Cooper witnessed said note by placing such "confidential letter" in plaintiff's central file, all in retaliation for plaintiff's federal case 2:18-cv-0560 JAM KJN P, in which plaintiff named G. Valencia, L. Cantu and T. Cooper as defendants.  Plaintiff avers that at the time this note was fabricated, discovery was ongoing in his federal case.  (ECF No. 9 at 17.)

      Plaintiff also states a potentially cognizable retaliation claim against defendant L. Cantu based on her subsequent packing of plaintiff's personal and legal property, allegedly confiscating and destroying one box of materials marked "legal/confidential," which included adverse supporting documents of L. Cantu's violations going back to March of 2017, as well as sealed motions and exhibits adverse to her defense in Case No. 2:18-cv-0560 JAM KJN P.  (ECF No. 9 at 17.)

Remaining Claims Not Cognizable or Not Related

      Claim Three

      Plaintiff alleges that defendant J. Cantu, Associated Warden, who is purportedly married to defendant Correctional Officer L. Cantu, knew or should have known that his adverse actions violated plaintiff's First Amendment rights; retaliation; instilling a hostile environment to invoke violence; active interference with plaintiff's right to litigate, chilling, with legal/punitive consequences, conflict of interest affecting the integrity of administrative proceedings.  (ECF No. 9 at 19.)  Defendant J. Cantu allegedly violated plaintiff's rights in three ways:

(1) On June 10, 2020, J. Cantu assigned himself to be the designated administrative supervisor to "oversee, investigate and judge" the unsubstantiated threat to staff which was a conflict of interest.  Plaintiff avers that J. Cantu's hostility toward plaintiff began when plaintiff grieved his wife's unconstitutional behaviors adverse to plaintiff.  J. Cantu put himself in four of plaintiff's classification committees – 3 in ad seg and 1 in B-yard program office – which imposed adverse and unwarranted punishments on plaintiff.  (ECF No. 9 at 19.)

(2) In July of 2020, J. Cantu again supervised the rules violation report alleging plaintiff refused a cellmate, knowing that plaintiff never refused a cellmate in 20 years.  Plaintiff alleges J. Cantu intended ill harm on plaintiff.  (ECF No. 9 at 19.)

(3) Defendant J. Cantu approved the placement of an unstable, Level IV inmate into a cell with plaintiff, a full-programming, nonviolent, Level II inmate with a physician-ordered bottom-bunk chrono and who was wrongfully put in ad seg for 80 days and then ejected into Level III, B-yard, building 10.  (ECF No. 9 at 20.)  Defendants J. Cantu and his wife, L. Cantu, had a decade-plus history with this Level IV inmate who also had a lower bunk chrono and who was on single cell status for six years due to his predatory violent behaviors with cellmates.  Plaintiff repeatedly requested he be separated from such cellmate based on such safety and security concerns, but second and third watch staff responded, "It's coming from above, A/W Cantu does not want to move either of you."  (ECF No. 9 at 20.)  Defendants J. Cantu and L. Cantu knew yet disregarded an excessive risk to plaintiff's health and safety, resulting in daily threats, assaults, and deprivations of plaintiff's meals.  Plaintiff also claims that the Level IV inmate was positive for COVID-19, and despite plaintiff being negative for COVID-19 and suffering with chronic restrictive pulmonary disease, defendant J. Cantu would not permit subordinate staff to separate the two inmates.  (ECF No. 9 at 20.)

As a result of defendant J. Cantu's actions, plaintiff suffered post traumatic stress syndrome ("PTSD"), chest and abdominal pains, secondary to severe cortisolic distress, 30 pound weight loss, pulmonary restrictions, shortness of breath, dyspnea at rest, prolonged sleep deprivation, chest and facial abrasions, COVID-19, pulmonary infection, and severe emotional

////

1  distress; loss of good time and milestone credits and marring of plaintiff's incarceration record.

2  (ECF No. 9 at 19.)

3      Retaliation Claims

4      "Prisoners have a First Amendment right to file grievances against prison officials and to

5  be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012)

6  (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  A viable retaliation claim in the

7  prison context has five elements:  "(1) An assertion that a state actor took some adverse action

8  against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

9  chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

10  advance a legitimate correctional goal."  Rhodes, 408 F.3d at 567-68.

11      Discussion

12      Plaintiff alleges that on June 10, 2020, J. Cantu assigned himself to be the designated

13  administrative supervisor to "oversee, investigate and judge" the unsubstantiated threat to staff

14  which was a conflict of interest.  Such vague statement is insufficient to demonstrate that J.

15  Cantu's involvement with the rules violation report alleging plaintiff wrote the anonymous note

16  threatening staff was based on plaintiff's conduct protected under the First Amendment.  Plaintiff

17  fails to allege specific facts showing that J. Cantu's involvement presented a conflict of interest.

18      Plaintiff alleges that J. Cantu's "hostility toward plaintiff" began "when plaintiff grieved

19  his wife's unconstitutional behaviors adverse to plaintiff."  (ECF No. 9 at 19.)  However, plaintiff

20  does not indicate when such grievance was filed or how defendant J. Cantu became aware of such

21  grievance.  It appears that plaintiff bases many of his allegations on his claim that J. Cantu is

22  married to Correctional Officer L. Cantu.  But such marriage, standing alone, is insufficient to

23  demonstrate that defendant J. Cantu retaliated against plaintiff based on plaintiff's conduct

24  protected under the First Amendment.  In addition, that J. Cantu, an Associate Warden, sat on

25  various committees that reviewed plaintiff's classification, standing alone, is insufficient to

26  demonstrate that such placement was based on retaliation for plaintiff's protected conduct.

27      Similarly, plaintiff's claim that in July of 2020, J. Cantu supervised the rules violation

28  report alleging plaintiff refused a cellmate, knowing that plaintiff never refused a cellmate in 20

8

1  years, fails to set forth specific facts demonstrating that J. Cantu took such action because of

2  plaintiff's protected conduct.

3      Plaintiff may be able to state a cognizable Eighth Amendment claim against defendant J.

4  Cantu based on plaintiff's claim that J. Cantu knew yet disregarded an excessive risk to plaintiff's

5  health and safety by placing and retaining the Level IV inmate in plaintiff's cell.  But as currently

6  pled, such putative Eighth Amendment claim is not related to plaintiff's First Amendment

7  retaliation claims pled in claims one, two or ten which are based on plaintiff's protected conduct

8  in pursuing Case No. 2:18-cv-0560 JAM KJN P.[3]

9      Although plaintiff references L. Cantu's prior knowledge of the Level IV inmate, plaintiff

10  fails to set forth L. Cantu's role, if any, in placing or retaining the Level IV inmate in plaintiff's

11  cell.  Indeed, in Claim Nine, plaintiff avers that defendants Coker and Charon falsified the rules

12  violation report claiming plaintiff refused a cellmate, succeeding in their efforts to place the Level

13  IV inmate in plaintiff's cell.  (ECF No. 9 at 28.)  Defendant L. Cantu's knowledge concerning the

14  Level IV inmate, standing alone, is insufficient to state an Eighth Amendment claim.

15  Claim Four

16      Plaintiff alleges defendant CCII G. McCarthy knew or should have known that his adverse

17  actions violated plaintiff's First Amendment rights, retaliation, instilled a hostile environment to

18  invoke violence, active interference on the protected right to litigate, chilling, and legal/punitive

19  ramifications.  (ECF No. 9 at 21.)  Plaintiff alleges defendant McCarthy twice violated plaintiff's

20  rights:

21      (1) On June 10, 2020, defendant McCarthy knowingly falsified state forms in order to

22  justify plaintiff's arrest by claiming an "expertise in handwriting" that the anonymous note

23

24  [3]  A plaintiff may properly assert multiple claims against a single defendant. Fed. Rule Civ. P. 18.
25  In addition, a plaintiff may join multiple defendants in one action where "any right to relief is
   asserted against them jointly, severally, or in the alternative with respect to or arising out of the
26  same transaction, occurrence, or series of transactions and occurrences" and "any question of law
   or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Unrelated
27  claims against different defendants must be pursued in separate lawsuits.  See George v. Smith,
   507 F.3d 605, 607 (7th Cir. 2007).  This rule is intended "to prevent the sort of morass [a multiple
   claim, multiple defendant] suit produce[s]."  George, 507 F.3d at 607.
28

9

threatening staff was identical to plaintiff's Form-22 request for interview.  (ECF No. 9 at 21.)
Plaintiff alleges the handwriting was clearly not a match, and disputes the "illogics":  (a) the
anonymous note incriminates only the plaintiff's first and last name, the plaintiff's active federal
case No. 2:18-cv-0560, and two of its defendants' names; (b) the note was written in third person;
and (c) the anonymous note did not have plaintiff's finger and palm prints.  (ECF No. 9 at
21.)  Plaintiff contends that had McCarthy done his minimal duty he would counter defendant G.
Valencia's statement that plaintiff "admitted" to the threat.

(2) Defendant G. McCarthy knowingly falsified state documents by concealing the
Sergeant's first interrogation of plaintiff when the anonymous note was first brought to plaintiff's
attention.  McCarthy then Mirandized plaintiff but refused plaintiff's requests for a referral to the
DA and to call plaintiff an attorney and prevented plaintiff from contacting anyone for three
weeks.  (ECF No. 9 at 21.)

As a result of such violations, plaintiff suffered PTSD, chest and abdominal pains
secondary to severe cortisolic distress, 30 pound weight loss, emotional distress; loss of good
time and milestone credits, and marring of plaintiff's incarceration record.

Although plaintiff purports to raise a retaliation claim against defendant McCarthy,
plaintiff provides no facts demonstrating that the alleged acts and omissions by defendant
McCarthy were taken in retaliation.  Specifically, plaintiff identifies no protected conduct which
allegedly motivated defendant McCarthy to falsify the comparison of the handwriting or to
withhold plaintiff's access to a lawyer or family members.

To the extent plaintiff claims defendant McCarthy violated plaintiff's constitutional rights
by falsifying the report, such claim also fails.  A "complaint alleging that an officer filed a false
report, by itself, fails to state a claim upon which relief can be granted." Koch v. Austin, No.
2006 WL 403818, at *5 (E.D. Cal. Feb. 16, 2006), adopted by 2006 WL 842585 (Mar. 28, 2006).
A cognizable claim is stated only if there is evidence that the false report was retaliatory, or the
inmate is not afforded procedural due process in the hearing on the disciplinary charge.  See Pratt
v. Rowland, 769 F.Supp. 1128, 1134 (N.D. Cal. 1991) (filing false report states a claim only if
retaliatory); Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986) (guards' "filing of unfounded

charges did not give rise to a per se constitutional violation actionable under section 1983");
Sprouse v. Babcock, 870 F.2d 450, 452 (9th Cir. 1989) (claim based on falsity of charges,
standing alone, did not state a constitutional claim) and Hanrahan v. Lane, 747 F.2d 1137, 1140-
41 (7th Cir. 1984) (guards' fabrication of evidence does not state a claim if procedural protections
are provided during disciplinary hearing).  Here, the amended complaint lacks any allegation that
plaintiff was deprived of procedural due process at a disciplinary hearing or that defendant
McCarthy filed a false report against plaintiff in retaliation for his exercise of a protected right,
nor can any such inference be drawn as to defendant McCarthy.

Plaintiff's fourth claim should be dismissed.

Claim Five

Plaintiff alleges defendant C. Weaver knew or should have known that his actions or
omissions violated plaintiff's First Amendment rights by retaliation, instilling a hostile
environment to invoke violence, active interference with plaintiff's protected right to litigate,
chilling, legal/punitive consequences.  (ECF No. 9 at 23.)  Plaintiff alleges defendant Weaver
twice violated plaintiff's rights:

(1) On June 10, 2020, defendant Lt. Weaver "personally oversaw" his subordinates Sgt.
Valencia and C/O Ms. L. Cantu creating the false anonymous note to retaliate against the plaintiff
for using his First Amendment rights.  (ECF No. 9 at 23.)  At a minimum, defendant Weaver has
a duty to uphold the truth and take corrective actions to stop the malfeasance by his subordinates.

(2) On June 10, 2020, defendant Weaver oversaw his subordinates C/O Hadden and C/O
Ms. L. Cantu confiscate and destroy and entire box marked "legal/confidential."  (ECF No. 9 at
23.)  Defendant Weaver knew that destroying such box would freeze plaintiff's protected right to
litigate his cases and therefore harm him.  Defendant Weaver examined and approved the "hot
trash" destruction knowing that it was neither hot trash nor contraband but did it anyway.  (ECF
No. 9 at 23.)

As a result, plaintiff suffered post traumatic stress syndrome ("PTSD"), chest and
abdominal pains, secondary to severe cortisolic distress, 30 pound weight loss, and emotional

////

11

1   distress; loss of good time and milestone credits, and marring of plaintiff's incarceration record.

2   (ECF No. 9 at 23.)

3          Plaintiff's first subclaim is too vague and conclusory to state a retaliation claim.  It is

4   unclear whether plaintiff's claim that Weaver "personally oversaw" such acts means that Weaver

5   directed the creation of such note, or whether Weaver simply witnessed such creation.  Further,

6   plaintiff fails to include specific facts showing any omission on the part of defendant Lt. Weaver

7   was based on plaintiff's conduct protected under the First Amendment.  Taking plaintiff's

8   allegation as true, that Weaver "personally oversaw" Sgt. Valencia and C/O Ms. L. Cantu create

9   the false note, plaintiff fails to explain how Weaver was made aware, if Weaver was, that the

10   creation of the false note was done in retaliation for plaintiff's protected conduct in litigating Case

11   No. 2:18-cv-0560 DAD KJN P, or other protected conduct.  Plaintiff does not allege that

12   defendant Weaver was aware of such court case.

13          Plaintiff's second subclaim is sufficient to support a retaliation claim based on the events

14   of destruction of legal materials on June 10, 2020.  However, plaintiff pleads no facts

15   demonstrating that the destruction of his legal materials on June 10, 2020, was based on plaintiff

16   litigating Case No. 2:18-cv-0560 DAD KJN P.  The participation of defendant L. Cantu in the cell

17   search and subsequent destruction of plaintiff's legal materials on June 10, 2020, standing alone,

18   is insufficient to demonstrate Weaver's failure to act was based on plaintiff's protected conduct in

19   litigating the federal case.  Absent such facts, the June 10, 2020 incident is not related to

20   plaintiff's first, second and tenth claims, and must be pursued in a separate action unless plaintiff

21   can allege specific facts demonstrating that defendant Weaver failed to stop the actions on June

22   10, 2020 because of plaintiff's protected conduct in Case No. 2:18-cv-0560 DAD KJN P.

23   Claim Six

24          Plaintiff alleges defendant Captain K. Luther knew or should have known that his actions

25   or omissions violated plaintiff's First Amendment rights by retaliation, instilling a hostile

26   environment to invoke violence, active interference on protected right to litigate, chilling, and

27   legal/punitive consequences.  (ECF No. 9 at 24.)  Plaintiff alleges defendant Luther twice violated

28   plaintiff's rights by:

1    (1) On June 10, 2020, defendant Luther "personally oversaw" his subordinate staff

2 orchestrate the false threat and ruse of investigation.  Defendant Luther had a duty to uphold the

3 truth and take corrective actions to stop the false report that was happening in front of him.

4 Plaintiff later pleaded with defendant Luther, stating "You know that note doesn't match my

5 handwriting – this [is] wrong – I'm a full-programmer."  (ECF No. 1 at 24.)  Defendant Luther

6 responded:  "It doesn't make sense; I don't care; I just want you off my yard," despite Luther

7 knowing that there were legitimate constitutional means to alleviate his concerns about plaintiff

8 programming on his yard and having examined plaintiff's incarceration record.  (Id.)

9    (2)  On June 10, 2020, defendant Luther oversaw his subordinates confiscate and destroy

10 an entire box of plaintiff's legal/confidential documents, knowing it would harm plaintiff's

11 protected right to litigate his cases, but approved the destruction anyway.  (ECF No. 9 at 24.)

12    As a result, plaintiff suffered post traumatic stress syndrome ("PTSD"), chest and

13 abdominal pains, secondary to severe cortisolic distress, 30 pound weight loss, and emotional

14 distress; loss of good time and milestone credits, and marring of plaintiff's incarceration record.

15 (ECF No. 9 at 24.)

16    Here, plaintiff does allege that the note was created in front of defendant Luther.

17 However, plaintiff does not allege that Luther was aware the note was falsified in retaliation for

18 plaintiff's protected conduct in litigation Case No. 2:18-0560 JAM KJN P.  Absent such

19 allegation, plaintiff fails to state a retaliation claim related to his claims against defendants G.

20 Valencia, L. Cantu and T. Cooper.

21    Absent allegations that defendant Luther was aware of plaintiff's earlier protected

22 conduct. that defendant Luther "oversaw" the subsequent confiscation and destruction of

23 plaintiff's box of legal materials is insufficient to demonstrate his acquiescence was in retaliation

24 to such protected litigation conduct.  While Luther's subsequent omissions raise an inference that

25 he was allowing the confiscation and destruction of such legal materials in retaliation for

26 plaintiff's litigation activities, it is insufficient to connect it to plaintiff's retaliation claims

27 brought against defendants G. Valencia, L. Cantu, and T. Cooper in claims one, two and ten of

28 the amended complaint.

13

Claim Seven

Plaintiff claims that defendant Hadden should have known that her adverse actions violated plaintiff's First Amendment right with retaliation, active interference with plaintiff's right to litigate, chilling such right.  (ECF No. 9 at 25.)  Specifically, on June 10, 2020, defendant Hadden confiscated and destroyed an entire box marked "legal/confidential."  Defendant Hadden saw that the contents of the box contained envelopes marked "legal/confidential" and had supporting litigation exhibits adverse to her coworker defendant L. Cantu.  Defendant Hadden knew that having her co-worker in the classroom helping with the property inspection was a conflict of interest and violated plaintiff's protected rights.  Hadden also knew that destroying such evidence would freeze and irreparably cripple plaintiff's right to litigate.  Hadden also refused plaintiff's request to inspect the discarded "hot trash" pile.  Plaintiff argues that any reasonable correctional officer would know the difference between hot trash/contraband and legal materials and know that legal/confidential documents were not to be destroyed.  Such destruction served no legitimate penological purpose.

As a result, plaintiff suffered post traumatic stress syndrome ("PTSD"), chest and abdominal pains, secondary to severe cortisolic distress, 30 pound weight loss, and emotional distress; loss of good time and milestone credits, and marring of plaintiff's incarceration record.

Like plaintiff's allegations against defendant Luther, plaintiff's allegations raise an inference of retaliation given the nature of the materials being confiscated and destroyed.  But plaintiff alleges no facts connecting defendant Hadden's actions to plaintiff's protected conduct in Case No. 2:18-0560 JAM KJN P against defendants G. Valencia, L. Cantu, and T. Cooper in claims one, two and ten of the amended complaint. and therefore should be pursued in a separate action.

Claim Eight

Plaintiff alleges that defendant Sgt. J. Vega, Acting Lt., knew or should have known that his actions violated plaintiff's First Amendment rights by retaliation, instilling a hostile environment to invoke violence, depriving plaintiff of physician-ordered medications, ordering extreme temperature conditions for a prolonged period, deliberate destruction of two

14

administrative appeals ready for second or final level review; none of Vega's actions served any institutional purpose other than to cause plaintiff injury.  (ECF No. 9 at 26.)  Specifically, defendant Vega was the receiving administrator in ad seg, responsible for ad seg subordinate's behaviors.  Plaintiff was wrongfully placed in ad seg based on a fabricated anonymous unsubstantiated note:  June 10, 2020.  Defendant Vega placed a sign on plaintiff's cell door:  "Inmate threatened to murder staff."  (ECF No. 9 at 26.)  This false sign instilled violence on plaintiff for over 80 days.  Defendant Vega refused plaintiff's multiple requests for his physician-ordered medications for 10 days.  By June 11, 2020, plaintiff's respiratory distress worsened; Vega should have known that such medication was critical to maintain plaintiff's oxygen saturation levels.  Plaintiff made multiple requests for such medication to every passing correctional officer and sergeant to no avail.  Defendant Vega caused plaintiff to suffer sleep deprivation by ordering a "wellness check" on plaintiff every 30 minutes, 24/7, which included kicking or pounding on plaintiff's cell twice an hour -- 48 times a day.  Vega also gave the order to keep plaintiff in a cage in the outside July heat (105 degrees) for nearly 5 hours without his respiratory medications and no shade.  (ECF No. 9 at 26.)  Plaintiff personally handed his 602 grievances and declarations to defendant Vega to be mailed and defendant Vega destroyed them.  In addition, Vega held for three weeks plaintiff's emergency filings to be sent to federal court, thus freezing plaintiff's right to file litigation.

The week of August 10, 2020, defendant J. Vega orchestrated the placement of a violent and unstable Level IV inmate into plaintiff's cell upon plaintiff's release from ad seg.  As a result, plaintiff suffered assaults, threats and deprivations of his meals.  Vega knew that both plaintiff and the Level IV inmate had lower bunk chronos.

As a result of Vega's actions, plaintiff suffered post traumatic stress syndrome ("PTSD"), chest and abdominal pains, secondary to severe cortisolic distress, 30 pound weight loss, shortness of breath, dyspnea at rest, prolonged sleep deprivation, prolonged heat exposure leading to heat exhaustion and dehydration, chest and facial abrasions, and severe emotional distress.  (ECF No. 9 at 27.)

////

15

Although plaintiff raises potentially cognizable Eighth Amendment claims against defendant Vega, plaintiff does not allege that defendant Vega knew the anonymous note threatening staff was not written by plaintiff.  Thus, while Vega's actions taken after plaintiff was placed in administrative segregation were highly inappropriate and placed plaintiff at risk, plaintiff includes no facts demonstrating such actions were taken in retaliation for plaintiff's protected conduct; rather, plaintiff's allegations suggest defendant Vega's actions were taken because he believed plaintiff had threatened to murder staff.[4]

Similarly, while plaintiff appears to state a potentially cognizable Eighth Amendment claim based on placing plaintiff at risk by orchestrating the placement of a Level IV inmate in plaintiff's cell, plaintiff alleges no facts demonstrating that such action was taken in retaliation for plaintiff's protected conduct.

Also, such Eighth Amendment claims are unrelated to plaintiff's retaliation claims against defendants Valencia, L. Cantu and T. Cooper alleging retaliation based on plaintiff's protected conduct in litigating Case No. 2:18-cv-0560 JAM KJN P, and thus must be brought in a separate action.

Claim Nine

Plaintiff alleges that defendants Sgt. T. Coker and Lt. J. Charon knew or should have known that their actions violated plaintiff's First Amendment rights by retaliation, instilling a hostile environment to invoke violence, and falsified a state form.  Specifically, in July of 2020, defendants Coker and Charon approached plaintiff's ad seg cell door; Coker asked plaintiff if he had a problem taking a cellmate.  Plaintiff responded that he has no problem taking a cellmate, he's had one since 2001, provided plaintiff's safety and well-being aren't compromised, he would take a cellmate.  The defendants left.  Three days later an unidentified CCI came to the door concerning the upcoming ICC Committee hearing, and added, "by the way, you got written up for

---

[4]  Plaintiff's allegations that defendant Vega withheld plaintiff's grievances, without more, fails to state a cognizable due process claim.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Further, plaintiff fails to allege an actual injury to court access allegedly incurred by the three week delay in plaintiff's court filings.  A plaintiff must show that he suffered an "actual injury" by being shut out of court.  Lewis v. Casey, 518 U.S. 343, 350-51 (1996); Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011).

refusing a cellmate." (ECF No. 9 at 28.)  Defendants Coker and Charon falsified a state form RVR claiming that plaintiff refused to take a cellmate.  The RVR was signed by defendants J. Cantu, Coker and Charon, and resulted in having the Level IV violent inmate placed in plaintiff's cell.  As a result, plaintiff suffered post traumatic stress syndrome ("PTSD"), chest and abdominal pains, secondary to severe cortisolic distress, 30 pound weight loss, chest and facial abrasions, and severe emotional distress.

Again, plaintiff fails to set forth any fact showing that either defendant Coker or defendant Charon falsified the rules violation report because of plaintiff's protected conduct.  While plaintiff may be able to state an Eighth Amendment claim based on their responsibility in having the Level IV inmate placed in plaintiff's cell, such claim is not related to the retaliation claim against defendants G. Valencia, L. Cantu, and T. Cooper in claims one, two and ten of the amended complaint.

Claim Eleven

Defendant Lt. J. Austin knew or should have known that his actions or omissions violated plaintiff's First Amendment rights and failed to protect plaintiff.  (ECF No. 9 at 30.)  On August 10, 2020, defendant Austin was called to hear the matter of the "bogus threat on staff."  (Id.)  Defendant Austin examined the anonymous note, the form-22 request for interview with the captain, and the findings by the ISU, all pointing to plaintiff's innocence.  Despite such evidence, defendant Austin stated, "I don't know – this doesn't make sense.  But I gotta find you guilty anyway." (ECF No. 9 at 30.)  Plaintiff contends that defendant Austin chose to act in line with the Code of Silence rather than according to his oath of office.

As a result, plaintiff suffered post traumatic stress syndrome ("PTSD"), chest and abdominal pains, secondary to severe cortisolic distress, 30 pound weight loss, and severe emotional distress; loss of good time and milestone credits, and marring of plaintiff's incarceration record.  (ECF No. 9 at 30.)

Plaintiff again fails to allege that Austin was aware of plaintiff's protected conduct, or that plaintiff's protected conduct motivated Austin to find plaintiff guilty.  Rather, plaintiff attributes Austin's actions to the Code of Silence.  Plaintiff's conclusory allegations as to defendant Austin

are insufficient to state a First or Eighth Amendment claim.  It appears defendant Austin was the hearing officer; while Austin's guilty finding may have resulted in plaintiff being placed in administrative segregation, plaintiff sets forth no facts demonstrating Austin's personal involvement or connection with what happened after plaintiff was put in ad seg.  Plaintiff fails to state a cognizable claim as to defendant Austin.

Claim Twelve

Defendants Lt. Mercado and Sgt. Mohr knew or should have known that their actions or omissions violated plaintiff's First Amendment rights and failed to protect plaintiff.  (ECF No. 9 at 31.)  On August 6, 2020, defendants Mercado and Mohr escorted plaintiff from ad seg to ISU eight weeks after plaintiff was falsely accused of authoring the anonymous note threat.  Nether defendant interviewed plaintiff before August 6, 2020, and failed to explain to plaintiff why he was not earlier interviewed.  (ECF No. 9 at 31.)  Defendants Mercado and Mohr detained plaintiff for a two-hour inquiry, admitted they reviewed plaintiff's incarceration record and noted no significant violent history to substantiate the threat to kill staff as well as plaintiff was a full programmer; they also reviewed the anonymous note.  Plaintiff repeatedly denied writing the anonymous note.  Both defendants concluded after the inquiry that "the whole threat claim does not make sense . . . written in third person." (ECF No. 9 at 31.)  Plaintiff claims they did not believe there was a genuine threat.  (Id.)  Plaintiff asked for a copy of their findings in the ISU report, and defendants stated they would also be discussing the ISU report with Warden Covello.

Subsequently, defendants Mercado and Mohr buried their investigative report and took the code of silence.  (ECF No. 9 at 32.)  Plaintiff remained in ad seg and never received their ISU report.  Plaintiff claims both defendants had a duty to uphold the truth, and their omissions caused plaintiff harm.  As a result, plaintiff suffered PTSD, chest and abdominal pains secondary to severe cortisolic distress, 30 pound weight loss, and severe emotional distress; loss of good time and milestone credits, and marring of plaintiff's incarceration record.  (ECF No. 9 at 32.)

Plaintiff provides no facts meeting all the elements of a retaliation claim; specifically, he identifies no protected conduct which allegedly motivated the withholding of the ISU report by either defendant Mercado or defendant Mohr.

18

To the extent plaintiff contends defendants Mercado and Mohr failed to adequately investigate plaintiff's claims, such claims are not a basis for a plausible § 1983 claim.  Baker v. Beam, 2019 WL 1455321, at *6 (E.D. Cal. 2019), findings and recommendation adopted in part, 2019 WL 2417577 (E.D. Cal. June 10, 2019); Drake v. Ibal, 2022 WL 18027808, at *8 (E.D. Cal. Dec. 30, 2022) (no claim for faulty investigation for removal of evidence from the investigative file).  To the degree plaintiff is trying to hold defendants Mercado and Mohr liable for an independent, unspecified constitutional violation based upon an allegedly inadequate investigation, there is no such claim.  See Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); Page v. Stanley, 2013 WL 2456798, at *8-9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim alleging that officers failed to conduct thorough investigation of plaintiff's complaints because plaintiff "had no constitutional right to any investigation of his citizen's complaint, much less a 'thorough' investigation or a particular outcome"); Tirado v. Santiago, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), findings and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (no constitutional claim for failing to investigate an appeal).

Plaintiff's bald claim that defendants Mercado and Mohr failed to protect plaintiff is unsupported.  Plaintiff's allegations demonstrate that such defendants were solely charged with conducting an ISU investigation.

Plaintiff's claim twelve fails to state cognizable First or Eighth Amendment claims as to defendants Mercado and Mohr.

Claim Thirteen

Plaintiff alleges defendant Covello, Acting Warden at MCSP, knew or should have known that his omissions violated plaintiff's First Amendment rights.  Covello is responsible for the supervision of all MCIC/MCSP personal, personally reviews all administrative appeals and evidence and oversees such appeals ensuring that administrative remedies were effectively available and operated with integrity.  (ECF No. 9 at 33.)  On June 10, 2020, defendant Covello

1    personally oversaw his subordinate personnel at MCIC/MCSP orchestrate a scheme stemming

2    from the fabrication of a bogus anonymous note threatening staff.  Covello knew or should have

3    known that placing Associate Warden J. Cantu, spouse of L. Cantu, was a conflict of interest that

4    compromised the investigations, administrative proceedings and rulings surrounding the false,

5    unsubstantiated threat posed by the anonymous note.  Covello knew or should have known that he

6    should have immediately ordered the Internal Security Unit ("ISU") to investigate the threat, not

7    wait 8 weeks.  Instead, Covello "quashed" the ISU's August 6, 2020 findings that there was "no

8    genuine threat" and "chose code of silence and acts of omission."  (ECF No. 9 at 33.)  Plaintiff's

9    family personally notified Warden Covello by letter and phone calls, yet Covello did nothing.  In

10   addition, Covello was present at three of the four classification committee hearings and knew that

11   J. Cantu was present at all four, yet Covello failed to supervise or prevent the active interference

12   and conflicts of interest posed by J. Cantu's involvement.  Covello knew or should have known

13   that plaintiff's handwriting did not match the anonymous note.  Covello knew the high risk posed

14   by housing the Level IV inmate with plaintiff yet failed to take any action.  (ECF No. 9 at 34.)

15           As a result, plaintiff suffered PTSD, shortness of breath, dyspnea at rest, prolonged sleep

16   deprivation, heat exhaustion, chest and abdominal pains secondary to severe cortisolic distress,

17   pulmonary restrictions, 30 pound weight loss, chest and facial abrasions, COVID-19, pulmonary

18   infection and severe emotional distress; loss of good time and milestone credits, and marring of

19   plaintiff's incarceration record.  (ECF No. 9 at 34-35.)

20           Plaintiff's allegations against defendant Covello are conclusory without specific facts

21   supporting cognizable claims for relief.  Plaintiff alleges no facts demonstrating that defendant

22   Covello acted in retaliation based on plaintiff's protected conduct.  There are no facts

23   demonstrating Covello was aware of plaintiff's litigation activities in Case No. 2:18-cv-0560

24   JAM KJN P.  Plaintiff's broad and conclusory claims that Covello knew or should have known of

25   various acts or omissions are based on respondeat superior not actual connections to the incidents

26   at issue here.  Just because J. Cantu was married to L. Cantu does not demonstrate a conflict of

27   interest or does Covello's mere presence during a classification hearing, without more,

28   demonstrate a constitutional violation.  As discussed in claim twelve, an inadequate investigation

                                                     20

1    is not a constitutional violation; therefore, that defendant Covello did nothing in response to

2    contacts about the investigation from plaintiff's family does not constitute a violation.  In light of

3    plaintiff's refusal to amend, it is unclear whether plaintiff could state an Eighth Amendment claim

4    against defendant Covello based on a failure to protect theory in light of plaintiff's housing with

5    the Level IV inmate.  The amended complaint does not allege specific facts demonstrating

6    Covello's knowledge and connection to such incident.  In any event, such incident is not related

7    to plaintiff's retaliation claims brought against defendants G. Valencia, L. Cantu, and T. Cooper

8    in claims one, two and ten of the amended complaint and must be raised in a separate action.

9    Claim Fourteen

10          Plaintiff alleges defendants R. Diaz and K. Allison, both Directors of the CDCR, knew or

11   should have known that their acts of omission violated plaintiff's First Amendment rights.  (ECF

12   No. 9 at 36.)  On June 10, 2020, plaintiff was falsely accused of threat on staff based solely on an

13   unsubstantiated anonymous note.  Plaintiff then had his legal property confiscated and destroyed

14   and was subjected to daily retaliatory behaviors by subordinate state actors under defendants Diaz

15   and Allison, who were informed of such violations by certified letters and phone calls from

16   plaintiff's family.  Plaintiff provided copies of grievances and declarations to defendant Diaz, but

17   none left building 12 because Sgt. J. Vega destroyed them.  (ECF No. 9 at 36.)  Defendant Allison

18   replaced Diaz and plaintiff's family again sent certified mail documenting the violations, but

19   Allison took no corrective action.  Both Diaz and Allison were responsible for the supervision of

20   all California prisons, including MCIC/MCSP.

21          As a result of the omissions of defendants Diaz and Allison, plaintiff suffered PTSD, chest

22   and abdominal pains secondary to severe cortisolic distress, pulmonary restrictions, shortness of

23   breath, dyspnea at rest, prolonged sleep deprivation, heat exhaustion, 30 pound weight loss, chest

24   and facial abrasions, COVID-19, pulmonary infection and severe emotional distress; loss of good

25   time and milestone credits, and marring of plaintiff's incarceration record.  (ECF No. 9 at 37.)

26          Plaintiff's allegations against defendants Diaz and Allison are solely based on their

27   supervisorial roles.  Plaintiff does not set forth when his family contacted such defendants.

28   Although plaintiff mailed copies of grievances and declarations to defendant Diaz, plaintiff

21

concedes that Diaz did not receive them because Sgt. J. Vega destroyed them.  When defendant

Allison took the place of Diaz, plaintiff's family notified defendant Allison by certified letter.

But plaintiff does not specifically describe the information his family gave to defendant Allison,

or when plaintiff's family sent the information.  Thus, it is unclear what, if any, corrective steps

defendant Allison could take.  For these reasons, plaintiff has not stated potentially colorable

claims for relief against defendants Diaz and Allison.

Conclusion

Plaintiff appears to believe that all of the named defendants engaged in retaliatory actions

based on the threatening note plaintiff claims was falsely attributed to him because of plaintiff's

protected activity in Case No. 2:18-cv-0560 JAM KJN P.  But plaintiff fails to set forth facts

demonstrating that defendants other than G. Valencia, L. Cantu, and T. Cooper plausibly knew

the note was false or that such other defendants were aware of plaintiff's litigation activity in

Case No. 2:18-cv-0560 JAM KJN P.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  This action proceed solely on plaintiff's First Amendment retaliation claims as to

defendants G. Valencia, L. Cantu and T. Cooper in claims one, two and ten.

2.  Plaintiff's claim that defendants Weaver, Luther and Hadden confiscated and destroyed

a box of plaintiff's legal materials in retaliation for plaintiff pursuing litigation as evidenced by

the materials in the box that were clearly labeled (claims five, six and seven) state potentially

cognizable First Amendment claims and should be severed from this action and filed in a new

action.

3.  Plaintiff's claim that in August of 2020, defendants J. Cantu, Vega, Sgt. T. Coker, and

Lt. J. Caron violated plaintiff's rights by orchestrating the placement of a violent and unstable

Level IV inmate into plaintiff's cell, failing to protect plaintiff from harm (claims three, eight, and

nine) state potentially cognizable Eighth Amendment claims and should be severed from this

action and filed in a new action.

4.  The following claims be dismissed without prejudice:  plaintiff's claim that defendant

L. Cantu was aware of the Level IV inmate (claim three); claim four as to defendant McCarthy;

1    plaintiff's claim that defendant Vega interfered with plaintiff's access to the courts (claim eight);

2    claim eleven as to defendant Austin; claim thirteen as to defendant Covello; and claim fourteen as

3    to defendants Diaz and Allison.

4         5.  Plaintiff's claim that defendant Vega withheld plaintiff's grievances (claim eight) and

5    claim twelve as to defendants Mercado and Mohr be dismissed with prejudice;

6         6.  All remaining subclaims should be dismissed without prejudice.

7         These findings and recommendations are submitted to the United States District Judge

8    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

9    after being served with these findings and recommendations, plaintiff may file written objections

10    with the court and serve a copy on all parties.  Such a document should be captioned

11    "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that

12    failure to file objections within the specified time may waive the right to appeal the District

13    Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

14    Dated:  December 21, 2023

15

16                            KENDALL J. NEWMAN
                           UNITED STATES MAGISTRATE JUDGE

17

18   /mccl1884.56

19

20

21

22

23

24

25

26

27

28